23 F.3d 407
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Trulla MITCHELL, Plaintiff-Appellant,
v.
Joe B. HUDDLESTON, Don Holt, Gina Coakley, Jim Hodges, Patsy
Clark, John Wainscott, and Arnold Clapp, all
individually and in their official
capacities, Defendants-Appellees.
 No. 93-5193.
 United States Court of Appeals, Sixth Circuit.
 April 25, 1994.
 
 Before: JONES and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.
 
 
 1
 Plaintiff-Appellant Trulla Mitchell appeals the district court's judgment dismissing her claim of employment discrimination. The district court found that Mitchell did not have a constitutionally protected property interest in her job under Tennessee law and therefore could not state a claim under 42 U.S.C. Sec. 1983. We AFFIRM.
 
 I.
 
 2
 Mitchell has been employed by the Tennessee Department of Revenue as a career civil servant for the past twenty-three years. She is currently employed by the Department of Revenue as a Revenue Operations Supervisor 2. The Department of Personnel announced an opening for the position of Revenue Operations Supervisor 3 within the Department of Revenue in early 1992. Mitchell was interviewed, and in March 1992, she was selected for the position.
 
 
 3
 On April 1, 1992, two and a half weeks after her promotion, Defendant Gina Coakley informed Mitchell that she was being demoted to her previous position of Revenue Operations Supervisor 2. Coakley indicated that the reason for Mitchell's demotion was an investigation that indicated that impermissible bias may have entered into the selection process J.A. at 24. However, Mitchell's supervisors, who initially had recommended her for the position, indicated that impermissible bias had not affected their decision, and further stated that they would select Mitchell for the position again. Notwithstanding the supervisors' assertions, the selection process was conducted anew.
 
 
 4
 On April 2, 1992, a panel consisting of Defendants Patsy Clark, John Wainscott and Arnold Clapp was convened by Defendants Joe Huddleston and Jim Hodges. The panel was charged with re-interviewing the applicants for the Revenue Operations Supervisor 3 position. Mitchell was not chosen for the position in this second selection process. Instead, Ruth Johnson, a finalist in the initial process, received the job. Mitchell complained to Hodges and Holt about the panel's failure to select her. However, Mitchell was informed that "she had no rights whatsoever and that any grievance filed would not be considered as the matter was non-grievable." J.A. at 15.
 
 
 5
 Mitchell asserts that the panel's selection of Johnson was not accidental. She claims that prior to the Personnel Office's announcement of the Revenue Operations Supervisor 3 position, Johnson had engaged in a relationship with her supervisor, which she eventually terminated. Following Johnson's initial failure to secure the promotion, she threatened to file a sex discrimination suit against the defendants based upon her belief that her former lover had negatively influenced her ability to get the job. The threat of this suit, Mitchell alleges, was the real motivation behind the defendants' administration of a second selection process and Mitchell's consequent demotion.
 
 
 6
 Plaintiff filed a complaint in the district court alleging that defendants, both individually and in their official capacities, had deprived her of her right to due process in contravention of 42 U.S.C. Sec. 1983. The district court dismissed the case, finding that Mitchell did not have a constitutionally protected right to the Revenue Operations Supervisor 3 position and therefore could not assert a claim under 42 U.S.C. Sec. 1983. This appeal followed.
 
 II.
 
 7
 This court reviews de novo a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir.1987). When conducting its review, "[t]his court must construe the complaint in the light most favorable to [the plaintiff], accept all of [the plaintiff's] factual allegations as true, and determine whether [the plaintiff] undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, 498 U.S. 867 (1990).
 
 III.
 
 8
 On appeal, Mitchell asserts that the language of the Tennessee Code created a constitutionally protected property interest in her position as a Revenue Operations Supervisor 3. In essence, Plaintiff claims that she "had a legitimate expectation that she would not be removed from the subject position unless she was either unwilling or unable to perform the job satisfactorily." Mitchell Br. at 12. We do not agree.
 
 
 9
 In Board of Regents v. Roth, 408 U.S. 564, 577 (1972), the Supreme Court instructed that to be constitutionally protected, a person's right to any benefit must be based upon more than "an abstract need or desire for it.... [The person] must, instead, have a legitimate claim of entitlement to it." The Court also found that property interests that are afforded the protections of due process are created not by the Constitution but by state law. Id. Thus, in order to state a claim upon which relief may be granted, Mitchell must show that Tennessee law created a constitutionally protected property interest in her position as Revenue Operations Supervisor 3. This she cannot do.
 
 
 10
 Three of Tennessee's statutory or regulatory provisions motivate our conclusion in the instant case. The first of these, Tenn.Code Ann. Sec. 8-30-312(a), states:
 
 
 11
 Every person appointed to a position in the career service, after certification of such person's name from a promotion list or an employment list, shall be subject to a probationary period of employment. The probationary period shall commence immediately upon appointment and shall continue for such time, not less than six (6) months, as shall be established by the commissioner. At any time during the employee's probationary period, after the first month thereof, the appointing authority may remove the employee if, in the opinion of the appointing authority, the employee's work during the probationary period indicates that such employee is unable or unwilling to perform duties satisfactorily, or that the employee's habits and dependability do not merit continuance in the service.
 
 
 12
 The next relevant provision is Tennessee Department of Personnel Rules and Regulations Sec. 1120-2-.11(5), which states (emphasis added):
 
 
 13
 Subsequent Probationary Period. Probationary periods served under the same appointing authority after having career status in that agency are subsequent probations. Career employees serving subsequent probations have appeal rights but may be demoted to their former classification without right of appeal. Employees serving a subsequent probationary period retain career status in the classification in which that status was most recently attained.
 
 
 14
 We find that the language of Sec. 8-30-312, when read in light of Sec. 1120-2-.11(5), clearly does not confer any property right upon the position of a probationary employee. Thus, under Tennessee law, probationary employees do not have a constitutionally protected interest in their probationary positions of employment.[1] We find that this conclusion is tacitly confirmed by a third section of the Tennessee Code, which confers a "property right" only upon employees who have completed a probationary period. Tenn.Code Ann. Sec. 8-30-331(a) states in relevant part:
 
 
 15
 Employees who have successfully completed their probationary period have a "property right" to their positions. Therefore, no suspension, demotion, dismissal or any other action which deprives a regular employee of such employee's "property right" will become effective until minimum due process is provided....
 
 
 16
 Section 8-30-331 unquestionably bestows a property interest in employment upon those who successfully complete their probationary period. Had the Tennessee legislature intended to confer a similar right upon probationary employees, it certainly could have done so.
 
 
 17
 Our conclusion is supported by the Tennessee Court of Appeals as well. In Christians v. Department of Corrections, 790 S.W.2d 535 (Tenn.App.1990), the Tennessee Court of Appeals considered whether a state employee's termination that occurred while she maintained probationary status in a new position was a violation of that employee's due process rights. The court found that "[t]he rules of the Tennessee Department of Personnel make it clear that during that probationary period an employee may be separated from the service without right of appeal or hearing." Id. at 538. In light of the above, we conclude that the district court in the instant case correctly determined that Mitchell did not have a constitutionally protected interest in the position to which she was promoted.
 
 IV.
 
 18
 Mitchell next argues that Tenn.Code Ann. Sec. 8-30-312(b) required that the defendants provide her with a hearing before they demoted her. This section provides:
 
 
 19
 (b) The commissioner may remove an employee during the employee's probationary period, if the commissioner finds, after giving the employee notice and an opportunity to be heard, that such employee was appointed as a result of fraud or error.
 
 
 20
 Mitchell asserts that this language should be read to require a hearing whenever any fraud or error enters into an employment decision. However, Mitchell has cited to no authority in support of her position, and we cannot agree that such a broad reading of the statute's language is warranted. When attempting to divine the true meaning of a statute, it is well settled that the statutory language must be read in context and not in isolation. Oates v. Oates, 866 F.2d 203, 206 (6th Cir.), cert. denied, 490 U.S. 1109 (1989). When read in this manner, we find Mitchell's interpretation to be unsatisfactory.
 
 
 21
 Section 8-30-312(a), which immediately precedes the section at issue here, speaks, inter alia, of reasons why an employee might be terminated during the probationary period. "[T]he appointing authority may remove the employee if, in the opinion of the appointing authority, the employee's work during the probationary period indicates that such employee is unable or unwilling to perform." The language of Sec. 8-30-312(a) thus refers to behavior on the part of the employee that might lead to her removal. We find that Sec. 8-30-312(b) should be read in tandem to require allegations of fraud or error on the part of the employee before a hearing is necessary. Where Mitchell has not asserted that any fraud or error on her part led to her promotion, we find that the above language does not apply.
 
 V.
 
 22
 For the foregoing reasons, we AFFIRM the decision of the district court.
 
 
 
 [1]
 Although Mitchell did not have a property interest or right to a hearing with respect to her demotion from the position of Revenue Operations Supervisor 3, Tennessee law did create a property right with respect to Mitchell's former position, which she retained during the pendency of her probationary status. Thus, had the defendants simply fired Mitchell as opposed to demoting her, she could have asserted a due process claim with respect to the Revenue Operations Supervisor 2 position. See Rule 1120-2-.11(5)